# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JACOB DUFFER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil No. 3:15-cv-860** |
| | ) | **Judge Aleta A. Trauger** |
| SUMNER COUNTY, TENNESSEE; | ) | |
| GERALD HENRY; TONY MILLER; | ) | |
| MICHAEL GRAVES; WILLIAM BRAD | ) | |
| EIDSON; JAMES HART; SOUTHERN | ) | |
| HEALTH PARTNERS, INC.; SHARON | ) | |
| HARRIS; CHERYL KELLEY; JASON | ) | |
| CHRISTISON; PENNY PENNICK; | ) | |
| CANDI BULLOCK; and KENNETH | ) | |
| MATHEWS, JR. M.D., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

The defendants Sharon Harris, Cheryl Kelley, Jason Christison, Penny Pennick, Candi Bullock, Kenneth Mathews, Jr. (collectively, the "Individual Moving Defendants"), and Southern Health Partners, Inc. ("SHP") have filed a Motion to Dismiss (Docket No. 31), to which the plaintiff, Jacob Duffer, has filed a Response in Opposition (Docket No. 34), and the Individual Moving Defendants and SHP have filed a Reply (Docket No. 38). The parties have also filed additional reply briefing. (Docket Nos. 44, 47.) For the following reasons, the motion will be granted.

## BACKGROUND[1]

This action arises out of the plaintiff's incarceration at the Sumner County Jail (the

---

[1] Unless otherwise noted, the facts recounted in this section are drawn from the Second Amended Complaint (Docket No. 30) and are assumed to be true for purposes of evaluating the Motion to Dismiss.

"Jail") from April to October of 2014.  During this time, the Individual Moving Defendants were health care professionals working at the Jail as employees of SHP, which contracts with Sumner County to provide medical services to individuals housed at the Jail.  Mr. Duffer alleges that, throughout the time that he was at the Jail, the Individual Moving Defendants and SHP (collectively, the "Moving Defendants") negligently failed to provide him with adequate medical care.

First, Mr. Duffer alleges that, in May of 2014, he was unable to get medical treatment for scabies, which left him unable to sleep and made him scratch himself until he bled.  Second, and more importantly, Mr. Duffer alleges that, from August to September of 2014, he experienced a series of worsening symptoms, which culminated in his being hospitalized and diagnosed with acute myeloid leukemia.  Mr. Duffer alleges that the Moving Defendants failed to adequately respond to these symptoms or ensure that he received medical attendance from a medical provider who was qualified to diagnose and treat them.

Mr. Duffer's symptoms began in August of 2014, when he began to spit up blood and became unable to eat without vomiting.  By mid-August, Mr. Duffer was experiencing dizziness, shortness of breath, and vomiting, and he twice had to be brought back to the Jail while he was out on work crew.  Mr. Duffer alleges that, despite these worsening, serious symptoms, he was not taken to the hospital or provided with medical care from "*qualified*" medical professionals. Rather, Mr. Duffer was seen in August of 2014 by Penny Pennick, a licensed practical nurse, who Mr. Duffer alleges was "not trained, qualified, []or licensed to medically diagnose or treat patients."  (Docket No. 30 ¶ 34.)  After Mr. Duffer was seen by Nurse Pennick, Dr. Kenneth Mathews ordered tests of his blood sugar levels, but Dr. Mathews never examined Mr. Duffer himself.  Mr. Duffer again saw Nurse Pennick near the end of August of 2014, and she noted that

he had spent the last "3 days congested spitting up bloody content." (*Id.* ¶ 38.) Nevertheless, Mr. Duffer alleges that Nurse Pennick did nothing with this information, and Dr. Mathews again failed to examine him.

Mr. Duffer continued in his attempts to receive medical attention throughout September of 2014, but he alleges that he was consistently rebuffed. Early in the month, Mr. Duffer's condition had deteriorated to the point that a corrections officer had two other inmates carry him to the medical ward. When Mr. Duffer arrived at the medical ward, however, the nurse on duty refused to see him and accused him of faking his symptoms. Mr. Duffer further alleges that, after he was forced to leave, a sergeant told him that the correctional officers could not do anything about the nurses, because they "do not work for the jail." (*Id.* ¶ 43.) Later in the month, Mr. Duffer again requested medical attention, noting that, at this point, he was "losing weight fast" and "still [couldn't] hold down food without vomiting." (*Id.* ¶ 45.) Mr. Duffer was not seen for almost a week after this request was made and, then, only by another nurse, who Mr. Duffer again alleges was "not trained, qualified, or licensed to medically diagnose and treat patients." (*Id.* ¶ 46.) The nurse gave Mr. Duffer ibuprofen (which he alleges is contraindicated for patients with leukemia), a course of treatment that Dr. Mathews allegedly "signed off on" without ever examining Mr. Duffer. (*Id.* ¶ 46.)

Mr. Duffer was finally seen by Dr. Mathews on September 24, 2014, over a month after he first began reporting that he was vomiting and spitting blood. Mr. Duffer's blood was tested, and the resulting report indicated that Mr. Duffer was suffering from "anemia, severe leukocytosis, and severe thrombocytopenia." (*Id.* ¶ 49.) The next evening, Mr. Duffer was taken to the Emergency Department at Sumner County Medical Center, where doctors gave him a tentative diagnosis of acute myeloid leukemia and renal failure. Mr. Duffer was then transferred

to the Intensive Care Unit at Centennial Medical Center in "Critical Condition." (*Id.* ¶ 53.)

Mr. Duffer alleges that, shortly after he received his first round of chemotherapy on September 28, 2014, Sumner County and SHP began the process to have Mr. Duffer released from the Jail, so that they could avoid paying for his medical treatment, "which was expected to be of long duration and very expensive." (*Id.* ¶ 60.) As a result of these efforts, on October 1, 2014, a Sumner County Criminal Court Judge suspended the remainder of Mr. Duffer's sentence and ordered his release on unsupervised probation.

Mr. Duffer filed the original complaint on August 6, 2015, alleging that Sumner County, certain correctional officers, and the Moving Defendants exhibited deliberate indifference to violations of his constitutional rights, for which Mr. Duffer asserted claims under 42 U.S.C. § 1983. (Docket No. 1.) On November 23, 2015, Mr. Duffer filed the Second Amended Complaint (the "Complaint") and asserted, for the first time, a cause of action for negligence against Sumner County and the Moving Defendants, arguing that they breached their "duty to provide adequate medical care to [Mr. Duffer] under state law." (Docket No. 30 ¶¶ 63–102.)[2] On December 4, 2015, the Moving Defendants filed a Motion to Dismiss the negligence claims against them, arguing that those claims are "health care liability actions" as defined in § 29-26-101 of Tennessee's Health Care Liability Act (the "THCLA") and that Mr. Duffer failed to (1) provide pre-suit notice of the action as required by § 29-26-121 of the Act, or (2) file a certificate of good faith as required by § 29-26-122 of the Act. (Docket Nos. 31, 32.) Mr. Duffer filed a Response in opposition to the Moving Defendants' motion, arguing that his claims are not "health care liability" claims subject to the requirements of the THCLA, because they are based

---

[2] The pending Motion seeks to dismiss only the negligence claims against SHP and the Individual Moving Defendants; it does not concern the § 1983 claims against any of the other defendants or the negligence claim against Sumner County.

on the Moving Defendants' failure to provide Mr. Duffer with access to qualified medical professionals, and not related to the provision of medical care by the Moving Defendants themselves. (Docket No. 34, p. 2.) Specifically, Mr. Duffer argues that the Moving Defendants were negligent because they should have transferred him to a hospital, where he could see "proper" medical personnel, much earlier than they did. (*Id.*) The parties filed additional reply briefing further developing these arguments. (*See* Docket Nos. 38, 44, 47.)

## LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *accord Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (internal quotation marks omitted). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Detailed factual allegations are not required, but a complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on labels, "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *accord Twombly*, 550 U.S. at 555. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

## ANALYSIS

The THCLA applies to "health care liability" claims and imposes certain notice and filing requirements on plaintiffs. Specifically, § 29-16-121 of the THCLA requires that a plaintiff asserting a claim that falls within the purview of the Act must "give written notice of the potential claim to each health care provider that will be named as a defendant" at least sixty days prior to the filing of the complaint. Additionally, § 29-26-122 of the THCLA requires that, "[i]n any health care liability action in which expert testimony is required," the plaintiff must file a certificate of good faith stating that he has consulted with an expert who believes there is "a good faith basis to maintain the action." The Moving Defendants argue that Mr. Duffer's claims of negligence against them are subject to these requirements and must be dismissed because he has not complied with them. Mr. Duffer, for his part, acknowledges that he has not filed a certificate of good faith, and he does not dispute the Moving Defendants' contention that he did not provide them with written notice of his claims. He argues, however, that his negligence claims against the Moving Defendants are not subject to the THCLA, because they are not "health care liability" claims within the meaning of the Act.

In determining whether a claim is subject to the THCLA, courts consider the plain language of the Act's definition of a "health care liability action," which is "conclusive." *Osunde v. Delta Med. Ctr.*, No. W2015-01005, 2016 WL 537075, *7 (Tenn. Ct. App. Feb. 10, 2016). The THCLA defines a "health care liability action" as:

> [A]ny civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based.

Tenn. Code Ann. § 29-26-101(a).  As the Court of Appeals of Tennessee has noted, "[g]iven the breadth of the statute, it should not be surprising if most claims now arising within a medical setting constitute health care liability actions."  *Osunde*, 2016 WL 537075, at *7.

Under this definition, Mr. Duffer's negligence claims against the Moving Defendants are "health care liability" claims and, therefore, are subject to the THCLA.  Mr. Duffer has alleged that the Individual Moving Defendants negligently "failed to provide [him] with adequate medical care in accordance with state law" (Docket No. 30 ¶ 95) and that SHP negligently failed to "adequately contract for medical care" for inmates and to "ensure that its employees . . . implemented and enforced policies and procedures that provided for the medical care of inmates" (*id.* ¶ 101).  Mr. Duffer's negligence claims clearly allege that health care providers – SHP and its employees[3] – failed to provide appropriate health care services to Mr. Duffer or to ensure, through SHP's contracts and employee training, that such health care was provided.  Those claims are, therefore, subject to the THCLA and, particularly, to the Act's pre-suit notice requirement.  Mr. Duffer failed to provide the Moving Defendants with pre-suit notice of his negligence claims, and the court will, therefore, dismiss them without prejudice.

---

[3] Mr. Duffer introduces evidence in his Sur-Reply in an attempt to argue that two of the Individual Moving Defendants – Jason Christison and Nurse Pennick – do not hold active licenses and are not,  therefore, "health care providers" within the meaning of the THCLA.  (*See* Docket No. 44, p. 3.)  This argument is, however, without merit.  Not only have the Moving Defendants been able to introduce evidence demonstrating that Mr. Christison and Nurse Pennick are, indeed, licensed (Docket No. 47), but Mr. Duffer overstates the requirements of the THCLA.  The THCLA's definition of a "health care provider" extends to any "employee of a health care provider involved in the provision of health care services," without reference to whether or not that employee is "licensed."  Tenn. Code Ann. § 29-26-101(a)(2)(D).

*See Ellithorpe v. Weismark*, 479 S.W.3d 818, 828 (Tenn. 2015) (noting that failure to provide pre-suit notice should "result only in dismissal *without prejudice*").

The court is not persuaded by Mr. Duffer's arguments that the THCLA's broad definition of "health care liability" claims does not encompass his negligence claims against the Moving Defendants. Mr. Duffer argues that the THCLA only applies when the allegations concern health care services "given by the provider or to be given by the provider herself." (Docket No. 44, p. 3.) He contends that, because the Moving Defendants failed to "arrang[e] for *someone else* to provide proper medical care," his claims against them do not fall within the purview of the THCLA. (*Id.*) Mr. Duffer has provided no support for this limitation of the definition of a "health care liability action" under the THCLA, however, and the clear language of the definition itself does not lend itself to such a reading. Mr. Duffer also argues that the Moving Defendants' failure to transfer him to a hospital until September 25, 2013 was not "related to" the provision of health care services, because the Individual Moving Defendants had a duty as "lay people," unrelated to their status as medical personnel, to make sure that Mr. Duffer was seen by "proper" medical professionals. (*Id.* at p. 2.) Mr. Duffer has failed, however, to provide any support for his argument that a lay person would have a duty to ensure that Mr. Duffer was seen by "proper" medical professionals or that, even if a lay person had such a duty, the violation of that duty would fall outside of the scope of health care actions governed by the THCLA.

Because the court will dismiss Mr. Duffer's negligence claims against the Moving Defendants for failure to comply with the THCLA's pre-suit notice requirements, it need not reach the question of whether Mr. Duffer was also required to file a certificate of good faith (a failure which would warrant dismissal *with* prejudice). Tenn. Code Ann. § 29-26-122(c). Such a determination would require this court to determine whether "expert testimony is required" to

prove Mr. Duffer's claims and, absent a clearer formulation of the basis for Mr. Duffer's negligence claims against the Moving Defendants, the court does not believe that it has the information necessary to make such a determination. The court, therefore, declines to reach this question, and it will dismiss Mr. Duffer's claims without prejudice for failure to comply with the pre-suit notice requirement of the THCLA.[4]

## CONCLUSION

For the reasons discussed herein, the Motion to Dismiss filed by the Individual Moving Defendants and SHP (Docket No. 31) is **GRANTED**. The plaintiff's claims of negligence against the Moving Defendants are **DISMISSED WITHOUT PREJUDICE**.

It is so **ORDERED**.

Enter this 16th day of May 2016.

_____
ALETA A. TRAUGER
United States District Judge

---

[4] The court will not, however, allow Mr. Duffer to have two bites at the apple with respect to the THCLA's good faith certificate requirement. While dismissing without prejudice allows Mr. Duffer the opportunity to cure his failure to comply with the THCLA's pre-suit notice requirement, it should not be read to additionally provide him with the opportunity to cure his failure to comply with the good faith certificate requirement.